CARTER *v.* OSLIN.

5-985                                                293 S. W. 2d 890

Opinion delivered October 8, 1956.

*Paul K. Roberts,* for appellant.

*D. A. Clarke* and *C. T. Sims,* for appellee.

PAUL WARD, Associate Justice.  This litigation began when appellant, Ed Carter, filed a petition in the Chan-

cery Court of Drew County to force appellee, E. A. Oslin, to permit him the use of a lane which ran east from appellant's land across forty acres of land belonging to appellee. Appellant's contention was that he had an agreement with appellee that he could use the lane in lieu of using an old road which ran through the middle of the forty.

After a lengthy hearing the chancellor made numerous findings of fact in favor of appellant but refused to grant the relief prayed for, for one particular reason, wherein we think the chancellor fell into error, calling for a reversal. This will be discussed later.

Since we agree with all of the findings and conclusions of the chancellor except in the one instance noted above, we deem it unnecessary to set forth the testimony in detail.

The factual situation presenting the issue here to be decided can be briefly and summarily stated. Appellant is a part owner and in control of eighty acres of land on which he lives, and he also partly owns and controls a tract of pasture land which lies approximately a mile and a quarter south and slightly to the east. For many years appellant used an old prescription road, hereafter called the Old Road, largely for the purpose of driving his cattle to the open range and to his pasture land, which Old Road ran east approximately through the middle of a forty acre tract of land adjoining on the east and thence a short distance to a county road which runs north and south.

In 1940 or 1941 appellee bought the forty acres of land mentioned above together with other land lying south of appellant's homestead. Soon after appellee bought this land he placed a fence around the said forty but left gates where the Old Road intersected the east and west boundaries. Appellee maintained said fence and gates for a period of more than seven years and still so maintains them. However he allowed appellant to continue the use of the Old Road until about the year 1954 when, as appellant contends, the agreement referred to above was made.

There are some other matters covered by the pleadings and testimony which we think need to be mentioned only briefly. Old Road No. 4 runs in a northeasterly and southwesterly direction across appellant's eighty acres and also across appellee's land lying to the south. It appears from the testimony that this road is not usable during certain seasons of the year particularly because it crosses certain streams and the bridges are in a state of disrepair. Appellant built a cattle guard across this road to which appellee objects, but the chancellor held, and we think properly so, that this cattle guard was sufficient and need not be removed. Appellant it seems had placed certain obstructions in this road which the chancellor correctly ordered him to remove. In our opinion the chancellor correctly held also that this particular road had been practically abandoned by the public but that it could possibly be used in the future.

In a carefully prepared statement the chancellor found that the public had lost all right to use the Old Road mentioned above because appellee had maintained the fence and gates for a period of more than seven years; he found that some time in 1954 there was an agreement reached by the appellant and appellee that appellant would help erect fences for a lane leading from the southeast corner of his homestead and running along the south portion of appellee's forty acre tract and that appellant, in lieu of using the Old Road, could use the lane as a passage way for his cattle, and; that appellant's relinquishment of the right to use the Old Road constituted the necessary consideration for appellee's agreement to allow him to use the lane. The chancellor also found that appellant's right to use the lane was personal to him and that it would not constitute an easement on appellant's land. In our opinion the testimony fully justifies the findings of the chancellor, however we will later refer to the testimony establishing the agreement.

After making the above findings in favor of appellant, the chancellor refused the relief prayed for by appellant. This conclusion rested on a single point of law, and we think the chancellor fell into error. Although the chancellor was convinced that an agreement regard-

ing the lane was reached by the parties and was convinced that the consideration for this agreement was adequate, he took the view that appellant's right to use the lane as a passage way was subject to be terminated at any time by appellee, consequently holding that appellee had a right to place gates at each end of the lane and refuse to allow appellant to use the same.

We think this case is controlled largely by *Chaney* v. *Martin,* 205 Ark. 962, 171 S. W. 2d 961. The issue and the facts in the two cases are very similar. In the cited case Martin, like appellant here, had used a prescription right of way which he gave up for the use of a new passage way provided by Chaney. In resolving the issue in favor of Chaney this court said:

"We do not deem it necessary to decide whether the proof in this case justified the finding that appellee had acquired by prescription an easement along the old route used by him in crossing appellant's land. Regardless of whether appellee had acquired such right, it is shown by the evidence that appellant recognized this right to the extent that he provided for appellee a new right-of-way across his land, and the evidence further shows that appellee accepted this new route and used it for several months. Appellee thereby surrendered any prescriptive right to use the old route that he might have possessed. This exchange of routes, accompanied by surrender of the old route and acceptance and continued use of the new route by appellee, as was shown by the evidence in this case, was effective, even in absence of any writing to evidence the agreement. 'An oral grant (of an easement) will be upheld where it is accompanied by consideration, action in reliance on the grant, and by the grantee's being permitted the granted use.' "

It may be noted also that in the present case there is an element of consideration on the part of appellant that did not exist in the cited case, for here Carter donated his time and labor to help provide the lane.

All the testimony, facts and circumstances convince us that it was not the intention of the parties in this case that appellee would have the right to stop appellant from

the use of the lane at any time he desired, and it is sure that appellee makes no such contention. It is unreasonable to believe that appellant would have given up the right of way he had and contribute his time and labor in erecting fences if he knew or thought appellee could revoke the agreement at his whim. It is the more reasonable view that the parties construed the agreement at the time as giving appellant the right to use the lane as long as it was needed by appellant, and the construction placed on the agreement at that time must be given to it now. See *Continental Insurance Company* v. *Harris,* 190 Ark. 1110, 82 S. W. 2d 841. When appellant was asked if he and Mr. Oslin had any time limit on how long the lane could be used, he replied: "We put the lane through there. It was supposed to be indefinite."

Appellee, however, strongly denies that he made any agreement with appellant to allow him to use the lane instead of using the Old Road mentioned above. We have carefully reviewed this testimony and we think it supports the chancellor's finding that such an agreement was reached. Appellant says positively that he and Mr. Lassiter, a renter on Oslin's place, had such an agreement with appellee, that he talked with Oslin personally about it and that Oslin made the agreement. Lassiter corroborates appellant in all respects except that he says he did not know how long the agreement was to run. It is not disputed that appellant and Lassiter did furnish their time and labor, that the fences for the lane were actually built, that Oslin knew about it, and that Oslin permitted the appellant and Lassiter to use the lane for the intended purpose for some seven or eight months — until Lassiter moved off Oslin's farm.

Appellant's brief in this case contains only an abstract of the pleadings and the findings and conclusion of the chancellor and asks this court for a reversal on the ground that the chancellor made a misapplication of the law. As was quoted with approval in the case of *Mount* v. *Dillon,* 200 Ark. 153, 138 S. W. 2d 59, ". . . a judgment cannot be supported by conclusions of law inconsistent with the facts found, and the findings of fact will prevail over conclusions of law."

We mention the above because appellee requests us to charge appellant with the cost of printing 79 pages of abstracted testimony in accordance with the provisions of Rule 9 (e) of this court. It is our opinion that this request should not be granted for the reason that it was not necessary for appellant to include in his abstract this additional testimony. In appellant's Notice of Appeal he states: "Plaintiff does not appeal from any finding of fact made by the court." Nor did he include any testimony in his "Designation of Contents." Appellee was the one who designated the testimony.

In accordamce with what has heretofore been said, the decree of the trial court is reversed on the point indicated and the case is remanded with direction to enter an order compelling appellee to move the obstructions from the lane in question and to permit appellant to use the same for the passage of his cattle. In all other respects the decree of the chancellor is affirmed.